Thank you. Madam Clerk, please call the next case. 115-1174, United Quick Transportation v. Texas Com'n Counsel, you may approve. Proceed. Thank you, Your Honor. Justices, Counsel, Jim Kelly here on behalf of the employer in this case. Two preliminary things. First, there was a case cited, an unpublished decision that was not intentional. I apologize for that. I did catch that and I appreciate my opponent pointing that out. It's not in any way dispositive of any issue and necessary for my arguments. Thank you. The second issue is with regard to the back, the cervical spine, or excuse me, the lumbar spine in this case. It is, given that it's against the manifest weight standard, difficult. Really, the credibility issue is the big issue with regard to that. And so I don't believe that, I believe there could be a reasonable fact finder that could find that to be plausible. So I'm going to focus my attention on the wrist injury. And with regard to the wrist injury, the issue is against the manifest weight standard. And with regard to that injury, I do not believe that there is sufficient evidence in the record to support the finding with regard to the wrist injury. This was a gentleman that didn't have a specific accident, a specific incident at work. He was merely doing some stacking of tires on a Friday afternoon. There was no immediate medical attention. The witness he was working with did not recall him having any problems with his wrist or making any complaints about his wrist. The diagnosis when he went to the doctor was merely a strain. He had a long history, a long, long history of preexisting problems dating back years and, in fact, had a prior fracture that had never healed. It was a nonunion. He had had multiple doctors that had seen him in the past, and three or four different doctors had said that he will. Yeah, but the arbitrator called attention to the fact that there was no treatment or no documented treatment for this man's wrist from August 26, 2007, going all the way through to January 13, 2010, three years, and there's absolutely no indication of the claimant reported any problems with his left wrist in the 21 months between August, from August 18, 2010, until his work injury. So if there's no treatment and then all of a sudden he's got problems with the left wrist, isn't it fair for the commission to infer that he suffered an injury to the preexisting condition? It's not because the evidence in this case is that Dr. Cullen last saw him before this injury. Dr. Cullen said once your wrist gets to this extent and you have symptoms, his opinion is that those symptoms would not subside. So I think the only medical opinion that was given with regard to the symptoms in relation to the accident was Dr. Cullen. That's number one. Number two, the only evidence that this gentleman wasn't having symptoms before the accident was from the petitioner himself, and really that combined the only potential evidence. Why couldn't the commission have believed him? Because I think that it comes down to whether there's sufficient evidence and that being reasonable evidence. It's just not any old evidence. And I think the problem why you can't believe him in this case is the medical testimony by Dr. Cullen and then the testimony by his own doctor, and that is there is no basis, there is no objective basis to substantiate any kind of a traumatic injury here. Well, who's Dr. Carroll? Dr. Carroll is the treating doctor. Did he say that the accident may have aggravated the underlying condition? Didn't he say that? He did, Justice, and the problem with that is it's boilerplate language, and you have to read his deposition as a whole to see that that's premised on one factor, and that's a factor that I think is the only potential inference in the record, and that is this guy's testimony. What Dr. Carroll said is he said that this could have been aggravated. You could find an aggravation if you believe the subjective symptoms of this guy, that he wasn't asymptomatic before the accident. And if the commission believes that, how do you get around it? Well, I think you first have to get to whether there's any support for that opinion, and I think the opinion that he gave was boilerplate language, and I think it's like a good cross-examiner. You go through the whole deposition, and if you get to that final question, you don't even need to ask that boilerplate question. Let me narrow the focus down. Throw out all the medical. Let's assume he doesn't have Carroll noted. The claimant says, I was pain-free. I can show I didn't treat with any doctors for a couple of years. They believe him. Does he need anything else? I think that, Justice, if you... I mean, seriously, does he need anything else? I think in this case he does, and the reason why is, and this is where if you look at this transcript, you cannot take that testimony at face value, and that's where the reasonableness of some basis in the record has to come. It just can't be anything. It has to be reasonable, and for its reasonable basis. And this... Didn't he work for nine months for the respondent, performing his duties before the work-related accident, without any complaints of risk, pain, or any problems? Not true. What he did on this particular instance was totally different than any duty he'd ever done to the employer. So he went nine months going around picking up some trash, driving a school bus. The driver didn't show up. He did not do anything like this. And what did he do this time? In this case, he had a general afternoon from 345 to 345 range. He was stacking tires. And there's no specific incident. And the records, the prior records, show that if he would use his wrist in the past, he would get symptoms. So what we're talking about, was there any changes? I'm like, there's one problem we're talking about is the surgery. Is there any change in his condition? Well, Anderson and Carroll both said that he experienced swelling of the tissue in the wrist. He did it. He was very clear to point out that that predated the accident. And that's why there's no objective findings. The testimony by both doctors is clear. Dr. Carroll said he had that swelling. The only evidence that that would, Your Honor, would be right, would be something you could show would be an objective basis for an injury. He had that before the injury. Carroll said that. Dr. Cohen saw it before the injury, 2010. He had that same scapula lunate swelling. So it's not evidence of a traumatic injury. So it goes back to the question that was asked about this guy. Can you believe this guy? And you cannot. There's no reasonable basis to believe this guy. And if you look at this record, it does not recall, I mean, starting back in 2007. I mean, keep in mind what the inquiry is now is did he have symptoms before the accident. That's, you're relying on this guy's memory, which would have been at the time of the hearing, you know, years before. So here's his, this is his recall. He doesn't recall injuring both of his wrists falling five feet off a ladder. He doesn't recall ever getting previous x-rays. He doesn't recall ever having a left knee ACL reconstruction. He doesn't recall it at all. He does not remember having a carpal tunnel surgery. No recollection of that. And here was the arbitrator's comment, the person who was supposedly finding this credible. He says, page 45, wait a minute, wait a minute, wait a minute. Are you sure we have the right records for this person? He doesn't, he can't believe it. Counsel who makes, is critical of the pre-existing records and the briefs at that point then says, because the arbitrator turns to him and says, what's going on here? And he says, well, yeah, I guess I'll stipulate that's what this guy's records are. Yeah, those are, that is my understanding of his history. So that, that's at that juncture where we're at. Then he says he doesn't recall a fireworker's compensation injury. He doesn't recall having surgery in 2009. Can't recall which side of the body it was on or if he even had it. He was asked if he could be given his records, show him something that would recall his recollection. He said, you could not give me anything to recall my recollection. He was asked if he had any problems on page 50. And I know his counsel led him and gave him some good couple, two, three, did you have a problem? And he said, yeah, back in 2005, 2007, I kind of had some. He skips over 2010, he skips over everything in 2004. He skips over all the prior surgical arbitration. Asked point blank, did you have any prior problems with your wrist before the accident? No. Counsel says in his brief, oh, he was hurting. So we stopped. So what? We come back from the brief. And if you pick back up on page 50, he's asked three or four times more. You're saying you never had any prior problems with your wrist before the accident. And he answers multiple times, no prior problems. No prior problems on October 27, 2007. Correct. No prior problems on October 18, 2009. No problems. Correct. Correct. Correct. Correct. Why that's relevant is because what your question is aimed at, did he have problems six months before this accident? How in the world could this guy, if you take that testimony at all remotely, ever believe that? He never testified anywhere in his testimony that he had a wrist injury in 2007 and surgery in 2009? His counsel, on direct examination, his counsel said he had a prior issue with his wrist from 2005, somewhere between 2005 and 2007. That was his testimony on direct examination. He was followed up on across. And this is really this point, this is a really good point, because if you look at his counsel's redirect examination, he said, there can be no misunderstanding about how drastically inconsistent and unbelievable his own client's testimony was. He starts his own redirect examination off by saying, wait a minute, we've got a problem here. On direct examination, you told me you had, in 2005 to 2007, maybe a problem with your wrist. Now you've went the entire time we're in cross-examination, we're asked multiple times, and you're saying you never had any problems. So his own counsel realized, this guy, you can't buy any of this that he's saying. And if the arbitrator at that time, he summarizes and he says, well, I don't know if I can quantify the entire cross-examination, but I can tell you he didn't recall anything, and nothing will refresh his recollection. So in order for you to find that there's even a scintilla of evidence in the record, you have to believe that this guy can recollect before the accident and say, I didn't have any problems. And I can tell you that you cannot do that. He even said he had the surgery. He's testifying he's already had the surgery. That should tell you how confused he is about the chronology of these events when he's talking about problems leading up to this. In the transcript, if you look at the transcript, he specifically agrees that he's already had the arthroscopic surgery. Well, how does he, he puts that in the chronology? He puts that in the context? He must be talking about the symptoms leading up to that surgery. We have no idea. But there is no way you can support a decision, and that's the only way that you can use Carroll. But Carroll in his deposition, and that's why you have to read the entire deposition, the foundation for his opinions are not there unless you can find this guy to be able to establish in that period of time before the accident that he didn't have symptoms. Keep in mind that that question was not specifically asked of him, but it was asked of Cohen. And Cohen said once it gets to this point, there's no way the symptoms go away. It would be like holding a bone in your knee. You can say that you don't have symptoms, but the medical doesn't support it. With regard to the continuing on, he continues to go on and on and on, nothing to refresh his recollection. And the specific dates are only relevant to the extent that if he can't testify as to specific dates when he was having problems, when we know he was having problems, we absolutely know it was based on his records, how can we then say this six-month period right before his accident he wasn't having problems? There's no way that can be done. And his own attorney goes back and rehabilitates him and say, is it true you can't recall specific dates? You can't recall specific times. You just know at some point in time you had symptoms and problems. Well, that can't certainly be enough to find that there was a permanent change in this guy's underlying condition, which would necessitate the surgery. Our own Dr. Cohen says, yeah, you could expect for somebody who did activity on the day of the accident would have some symptoms, feel them. But once you have a condition like that, you have carpal tunnel, you pick up the cup, you have symptoms. You put it down, you don't have the symptoms. That's all that means. That means that there was not any change in his underlying condition. And I make the statement and have made the argument that Dr. Cohen is in a better position than Dr. Carroll. And the reason he is is Dr. Carroll doesn't even recall the prior treatment. Dr. Cohen does, and Dr. Cohen does a forensic examination looking at the pre-injury diagnostic films and comparing them to the post-injury diagnostic films. We never, hardly ever have serial diagnostic films in this game. And it's the worst, at least for the employer, you can't point to anything. We have them in this case. He says there's absolutely no change in his symptoms. He goes further to say he would have needed this, Cohen would have needed this surgery regardless of the work accident. It had no bearing at all on this guy's end-stage arthritis and his fusion that he's needed for many, many years. Dr. Carroll says the same thing. In the absence of this work accident, this gentleman could have needed this surgery. So there is absolutely, if you walk through this entire record, there is no record, there is no evidence that could support this finding with regard to the risk. The only way you could do that would be to read this transcript of this gentleman and somehow glean that there's any shred of any type of testimony that would be a basis to support it. And there is not. That's all that I have at this time. Thank you, Counsel. You'll have time to reply. Thank you. Counsel, you may respond. May it please the Court. Counsel. The employer's entire argument rests on the conclusion that Francisco Marone, the injured employee. The employer's entire argument relies on the conclusion that the claimant, Mr. Marone, is not credible, and that the arbitrator should have relied on the opinions of the employer's chosen section 12 examiners over claimant's treating physicians. All of the arguments, really, in every argument that's been made here today, are really just asking this Court to re-weigh the evidence. This Court has repeatedly discussed, both in its discussions and remarks, what a difficult hurdle an appellant bears in a case like this. Counsel, we understand what you're saying. Yes. How could they believe this man, who couldn't remember anything? Very easily. And I'll explain that to you. And I forgive Counsel for some things, because he was not the attorney who actually conducted the cross-examination. During the cross-exam, he indicated that there was nothing that could have been used to refresh Mr. Marone's recollection, but nothing was attempted to be used to refresh his recollection. It was essentially a memory quiz cross-exam, where Mr. Marone was not presented with any of the documents that the cross-exam was supposedly based off of. The Judge McGee, in fact, you know, and this whole thing has been, the Counsel seems to indicate that we're afraid of the record, that we don't invite a close inspection of the record, that we're attempting to take it out of context. Could we just get to the answer to my question? Sure. What is it that would allow the arbitrator to know that this guy was totally inconsistent in his testimony, but nevertheless found incredible on the issue of whether he had experienced difficulty with this risk for several years prior to the event? But I don't think he did find that the confusion was born from Mr. Marone. I believe if you look at the transcript on direct examination, Mr. Marone admitted that he had some problems with the left wrist prior to this accident. He testified that he was not having those problems in the nine months leading up to this accident. And there's medical documentation to support that? There is no medical documentation. There are no symptoms or no treatment documented for 21 months. So that supports that the absence of the treatment would be supportive of his position, would it not? As would the nine months that he had working without any complaints. And whether he was stacking tires or doing other tasks, he was working as a mechanic helper. And so he had to involve his wrists, his back. He never had any issues in those nine months. Do we have any medical opinions that provide a causal connection? We absolutely have medical opinions that provide a causal connection. Dr. Cohen specifically said, quote, I find that the injury of 12-9-11, I'm sorry, it appeared upon a reasonable degree of medical and surgical certainty that the strain could be considered an aggravating factor based on the fact that it accelerated an underlying arthritic condition and a pre-existing condition. Dr. Carroll also stated, I do hold an opinion on that. It's that the strain or the injury did accelerate or aggravate the condition that was laying between the two. I don't think your opponent disagrees that that's what Carroll said, unless you're losing the gist of his argument. His argument is that Carroll's entire opinion is based upon the credibility of the mechanism of injury or the condition that your plaintiff told him. So if he's not credible, there's no basis for Carroll's opinion. So it boils down to the credibility. Please address the credibility. The arbitrator saw the testimony firsthand, had no problems with Mr. Marone's credibility. Mr. Marone did the best he could with the memory quiz cross-examination without being provided any of the documents to provide an accurate history. And upon reviewing the transcript, Judge McGee, the circuit court judge, indicates the court has reviewed the transcript of this hearing numerous times, reading and re-reading Clayman's testimony specifically, and does not draw the same conclusions as employer with respect to Mr. Marone's credibility. Judge McGee also found that any confusion in the Clayman's testimony Counsel, I think you misunderstand. What Judge McGee did or did not do is irrelevant to us. What is relevant to us is what the commission did. I understand. We don't review what the judge did. I understand. And in the commission's, it's apparent in reviewing what occurred at the circuit court, at the commission level, is that the confusion in Clayman's testimony arose not from any desire or intention to mislead on the part of the claimant or be not credible, but instead by the inartful and unfair questioning of counsel on cross-examination. And in fact, during the cross-examination, arbitrator Cronin stopped counsel's questioning and addressed him off the record because he was confused at the way the questioning was coming in on cross-examination. And so the testimony was stopped and arbitrator Cronin, in fact, addressed the way the questions were being asked. So this credibility issue was made by cross-examination. I'm sorry. Not questioning whether we have the right medical records and the right claimant. Right. Those issues were because Was that what Cronin was questioning? I'm sorry? Was that what arbitrator Cronin was questioning? No. He was questioning whether counsel had questions written out. It was that that was the confusion of the cross-examination was born out of the questions. And I think Judge McIng on that, when he looked at the transcript, it's apparent from looking at the commission transcript. Do we care what Judge McIng or whoever the heck. No. And the only reason I'm bringing it up is because But we don't care about anybody else's interpretation. We care about your argument on the basis of the commission record. And that's what I keep, what I'm pointing out is at another reasonable fact finder, upon looking at that commission record, that's what they found is that the cross-examination, just like the arbitrator did, just like the commission did. We don't care about that, but you still want to come back to that, don't you? No, no, I don't. Can I just ask a simple question here? If the arbitrator finds the claimant credible and the commission adopts it and the commission then finds the claimant credible, Yes. Okay. What do we do with that? What can we do with that? And that's why I let in the manifest way to the evidence standard, particularly where credibility is involved. The commission weighs the evidence. It's for this court to decide only if there's evidence in the record to support the commission. Right. Your argument should be simple. There is evidence in the record. We're dancing around it. Commission finds credibility. We don't. Exactly. That's exactly my argument. The commission found Mr. Marone was credible. The commission found there was substantial evidence in the record to support the finding. And this court, upon reviewing the record, there's sufficient evidence in the record. This is not a case where the opposite apparent is clearly apparent or that no rational prior effect could have agreed with arbitrator Cronin. This court must find that there is evidence to support the record, that arbitrator's decision was not against the manifest weight of the evidence. The commission's decision. Yes, the commission's decision was against the manifest weight of the evidence. Upon examination of the record, the briefs, the arguments of counsel, the commission specifically stated that they base their opinion on the risks specifically based on petitioner's testimony, the mechanism of injury, the medical records, the opinion of Dr. Carroll, the fact that petitioner was able to perform the duties of a mechanic helper. Counselor, we've read the decision. I'm sorry? We've read the decision. We know what it says. Okay. Well, this is the evidence that the commission relied on. I believe there is sufficient evidence in the record and the case is not against the manifest. The decision was not against the manifest weight of the evidence and I would ask this court to affirm. Thank you. Thank you. Thank you. Counsel may move on. Just briefly, I have a hard time and I appreciate the fact that credibility is a determination that the commission can find, but that isn't really what my, that isn't what the argument is. The argument is using the manifest weight of the evidence and understanding what an onerous task that is to be standing here arguing that. Is there sufficient evidence in the record to support this decision? And so that's what I'm trying to focus on because is all of this evidence that you look at, does it support this decision? And that's, it doesn't. It doesn't support it in this case. And like I said, I tried to strain, to keep my credibility to find the two reasons, the two potential bases and they're hinged on one and the other. One another is the opinion of Dr. Carroll, but he said that that's basically contingent on whether there was credible preexisting symptoms. And so, but, so his, if you toss that out, because there really isn't reasonable basis to support that, there is no evidence. So there's a paucity of evidence to support this decision and it's that that I think it should be the way it should be framed. I was not there, so I can't speak to sidebars and things that were off the record, but I can tell you, and I would ask that that be disregarded what was off the record, but I can tell you from looking at the record, it's disingenuous for somebody to say that there was nothing to show to this guy when in fact the cross-examiner is holding a record and they're reading and the judge says, hey, don't read the Social Security number off the top of that record. And he's holding records in his hand and finally the judge says, well, maybe, maybe show them to him. And he says, if I show you this record, will this help? And he says, no, nothing will help. And that was asked multiple times of this gentleman. And we're not talking, to be able on direct examination, and his counsel used dates in all of his questions, and I think that's really relevant. He's asking specific dates on cross-examination, and this guy is going, yeah, yeah, yeah, yeah. But on cross-examination, I mean, this guy can't even remember what car he drove. He can't remember anything. Let me just ask you, because of the chase, and we're dancing around this credibility issue, so I'm going to ask you a very pointed question. You know that the commission found the claimant credible, correct? I don't read it that way. They didn't? No. I read it as... Then why did they find in favor of the claimant if they found him incredible? They didn't find him not credible, but I think the problem with the game is a practical one in this instance where arbitrators adopt people's decisions, and then the commission just writes a boilerplate. We affirm and adopt the... Well, if they write a boilerplate, we're stuck with it, aren't we? And so we are. I think that there's not a finding that this guy was incredible. But I don't think that you can find that there's a... I don't see a specific finding in here where anybody says that this guy's testimony about his pre-injury symptoms... So your argument is there was no finding in favor of him, therefore it should be reversed because they didn't find him credible. Is that what you're saying? Justice, they clearly found him in his favor. Why are we dancing around it? Well, because I don't think they made a specific finding that this guy is... The arbitrator, there's no way you can read this transcript. I don't care what the circuit court says. There's no way you can reread this transcript and not see how appalled the arbitrator was. He tried to stop the proceedings and says, I think we got the wrong guy. But he was so befuddled he found in favor... Well, and that's where I say you have to... I'm hoping that the practice of our comp law does not get watered down to the extent that we're not lawyers anymore. I mean, Section 5, Jury Instruction 5.01, if I was going to cross in this brown building, nobody could argue to me that I should have brought in records of the pre-existing, the claimants' pre-existing records and better records. I mean, we both equally have access to that. I brought him in. I mean, he should have brought in. He has access to them. You couldn't argue that'd be reversible error in a trial. So it's the same thing. Just because an arbitrator adopts a decision and then the commission indicates in a boilerplate that they adopted is not a finding of credibility. And the standard, and it was hit on, and it was a harbinger for what I'm dealing with right now earlier today when Justice Harris said, isn't it really about the get some benefits when standard? And it is in this case. That's at the heart of it. And that is it. But in this case, the inquiry has to be, is there a reasonable, is there evidence to support this? And it's not. It's not there. And that's why I tried to be. Can I read you something from the decision? Yes. Based upon the petitioner's testimony, the mechanism of injury, the medical records, the opinions of Dr. Carroll, the fact that the petitioner was able to perform his duties as a mechanical helper for a respondent for nine months prior to the accident with no complaints of his left wrist, the lack of evidence in the record that the petitioner underwent any treatment between December the 18th and March the 18th, the arbitrator finds that the petitioner's current condition of ill being of left wrist is causally related. That was adopted by the commission. Now, you can't tell me that they didn't find him credible. I find that that is a, on all of those factors, there's no analysis there. It says based on his testimony. I mean, I don't know what, that doesn't, obviously they listed everything that could be listed about the case. And as you pointed out earlier about the job duties, that is not at all a factor that could support this decision, that he worked for nine months. What he did in this case was not even, it was never even delved into. That's a summary statement. And I don't take that to be that they found this guy credible. Hold on counsel. Let's be not be disingenuous with us. If the commission says based upon the petitioner's testimony, do you mean to say that under any circumstances they could be interpreted as they haven't found him incredible? No, but I don't think they need to find it incredible or credible to support my argument. If they had left out the phrase based upon his testimony, I might agree with you. Justice, I don't know what in regard to this case that they're referring to. That could be. The man I know what they're referring to because they quoted it. They're talking about his testimony. They had nothing wrong with his wrist and felt no pain for several years before the event, certainly the nine months while he was working there and that all of a sudden after this event, he has this tremendous pain in his left wrist. And I know exactly what they said. Well, I don't read that. I'm not trying to be disingenuous with you. That's a boilerplate paragraph that has a bunch of clauses. And counsel, if you would prepare to suggest the decision, you would have included your boilerplate. Every one of these decisions is boilerplate. Justice, I'm not suggesting that that should not be in there, but in a summary fashion, but I'm saying where in the decision does it delve into those factors? And that's where I'm talking about the dumbing down of this practice in the case. They don't go into this testimony as being supportive that he didn't have symptoms before this accident because there's no way you can get that from this. The guy could not, he could not remember. He tests, look at page, look at page now. Counsel, you've gone beyond your time on reply. Okay. I was just, the only thing I was going to do with justice is that if you look at page 28, he, he indicates on the record that he understood he underwent the procedure, the arthroscopic procedure already. That's, that's clearly cause. Are you aware of the fact that this man had to testify through an interpreter? I didn't speak English. Well, I, are you aware of that? I'm not. Well, how about it's in the decision? Judiciary testified via an interpreter. I don't think anybody has, I don't think anybody has raised that issue yet. I'm not disagreeing. I'm only telling you it's in the decision. I understand. I'm not disagreeing with you. I'm just saying, I don't think anybody's raised that as an issue of why somebody couldn't tell what type of car they had, whether they had an ACL reconstruction, all the various things that are at issue in this case. Okay. Thank you. Thank you very much. Thank you. Counsel, thank you both for your arguments in this matter. We've taken our advisement, written this position, shall we?